UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN R. HUNGERFORD, ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | NO. CV 07-7621 AGR <br><br> MEMORANDUM OPINION AND ORDER |

Kathleen R. Hungerford filed this action on November 21, 2007. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on March 10 and 11, 2008. On September 22, 2008, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the Court remands for proceedings consistent with this opinion.

///

///

///

///

# I.

## PROCEDURAL BACKGROUND

On December 18, 2003, Hungerford filed an application for disability insurance benefits, which the Commissioner denied. A.R. 38-39. Hungerford requested a hearing. A.R. 44. The Administrative Law Judge ("ALJ") conducted a hearing on September 1, 2005, and a hearing on July 20, 2006, at which Hungerford and a vocational expert ("VE") testified. A.R. 305-316, 317-359. On October 24, 2006, the ALJ issued a decision denying benefits. A.R. 14-24. Hungerford requested review. A.R. 12. On September 21, 2007, the Appeals Council denied Hungerford's request for review. A.R. 5-9.

This lawsuit followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///

///

# III.

# DISCUSSION

## A. Disability

"A person qualifies as disabled, and thereby eligible for such benefits, only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and internal quotation marks omitted).

## B. The ALJ's Findings

Hungerford has severe impairments "involving the cervical and lumbar spines and upper extremities." A.R. 23. Hungerford has the residual functional capacity "for sedentary work that involves no more than occasional reaching, handling, gross manipulation, feeling and fingering." *Id.* The ALJ found that Hungerford "can sit for at least 6 hours an 8-hour workday, stand and/or walk at least 2 of 8 hours and lift/carry up to 10 pounds." A.R. 18. Based on her residual functional capacity, Hungerford cannot perform her past relevant work. A.R. 23. However, Hungerford can perform the jobs of customer service/customer complaint clerk and information clerk. *Id.* Hungerford "met the disability insured status requirements on her alleged onset date of November 3, 2002, and continues to meet them through the date of this decision." *Id.*

Notably, the ALJ accepted the consultative psychologist's impression that Hungerford was malingering. A.R. 19, 21-22.

## C. Step Five of the Sequential Analysis

At Step Five, the Commissioner bears the burden of demonstrating there is other work in significant numbers in the national economy the claimant can do. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). If the

Commissioner satisfies this burden, the claimant is not disabled and not entitled to disability benefits. If the Commissioner cannot meet this burden, the claimant is "disabled" and entitled to disability benefits. *Id.*

"There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id.* "Where a claimant suffers only exertional limitations, the ALJ must consult the grids. Where a claimant suffers only non-exertional limitations, the grids are inappropriate, and the ALJ must rely on other evidence. Where a claimant suffers from both exertional and non-exertional limitations, the ALJ must consult the grids first." *Id.* at 1115. However, "the grids are inapplicable [w]hen a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (citation and internal quotation marks omitted).

Here, the ALJ found that Hungerford's "skilled past relevant work . . . provided her with skills that are transferable (as described by the vocational expert and discussed in the body of this decision) to occupations comporting with her age, education, work activity and residual functional capacity." A.R. 23.

Hungerford argues that the ALJ was required "to make the additional finding of whether transferable skills cited by the vocational expert, to the jobs of customer service/customer complaint clerk and information clerk, would involve little, if any, vocational adjustment." JS at 6 (citing to 20 C.F.R. Pt. 404, Subpt. P. Appendix 2, § 201.00(f)[1]).

---

[1] Section 201.00(f) provides: "In order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools,

4

However, the ALJ made specific findings with respect to the amount of "vocational adjustment" that would be required. A.R. 22. First, the ALJ specifically quoted § 201.00(f). *Id.* Second, the ALJ stated:

> Based on the vocational data, including expert testimony, the claimant has gained skills that are readily transferable to jobs at the modified range of sedentary work assessed herein. These include computer skills, skills in reception, filing skills and skills working with the public. The expert's testimony, among other things, flows from the claimant's description of her executive assistant work that included coordinating schedules, filing reports, dealing with the public by phone and a host of other tasks.

*Id.*

The ALJ also found that the two jobs Hungerford could perform were described in the Dictionary of Occupational Titles ("DOT") as code 241.367-014 (customer service/customer complaint clerk)[2] and as code 237.267-010 (information clerk)[3]. *Id.*

---

work processes, work settings, or the industry."

[2] The DOT describes this job as: "Investigates customer complaints about merchandise, service, billing, or credit rating: Examines records, such as bills, computer printouts, microfilm, meter readings, bills of lading, and related documents and correspondence, and converses or corresponds with customer and other company personnel, such as billing, credit, sales, service, or shipping, to obtain facts regarding customer complaint. Examines pertinent information to determine accuracy of customer complaint and to determine responsibility for errors. Notifies customer and designated personnel of findings, adjustments, and recommendations, such as exchange of merchandise, refund of money, credit of customer's account, or adjustment of customer's bill. May recommend to management improvements in product, packaging, shipping methods, service, or billing methods and procedures to prevent future complaints of similar nature. May examine merchandise to determine accuracy of complaint. May follow up on recommended adjustments to ensure customer satisfaction. May key information into computer to obtain computerized records." DOT 241.367-014, available at 1991 WL 672252.

[3] The DOT describes this job as: "Provides telephone inquirers with information concerning activities and programs of automobile club: Provides information on matters, such as traffic engineering and motor-vehicle safety,

5

1  The ALJ relied on the Disability Report Hungerford completed on
2 November 1, 2003. A.R. 22, 67-76. Hungerford described her duties as a Senior
3 Staff Assistant: "coordinate schedules, type reports, accounting programs,
4 budget reconciliation, phone duties, personal asst to director." A.R. 69.

5  The VE testified that Hungerford's past work as a stockbroker was "skilled
6 work with an SVP[4] of 7." A.R. 351. Her past work as a senior staff assistant was
7 most closely related to that of executive assistant and was also at a skill level of
8 SVP 7. *Id.* The VE testified that Hungerford had transferable skills of "computer,
9 reception, filing, mostly the computer skills." A.R. 352. The two jobs the VE
10 stated that Hungerford could perform based on the ALJ's hypothetical both had
11 lower skill levels of SVP 5.[5] A.R. 352-53; *see also Terry v. Sullivan*, 903 F.2d
12 1273, 1275-76 (9th Cir. 1990) ("when the claimant reaches age fifty-five[,] . . .
13 [t]he work must be 'less demanding' than that previously performed by the
14 claimant") (citation omitted). The VE also testified that the transferable skills
15 Hungerford had for performing the job of information clerk were "reception and
16 computer, working with the public." A.R. 353.

17  Thus, the ALJ's finding that Hungerford's work skills were transferable with
18 very little vocational adjustment was supported by substantial evidence in the
19 record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1043 (9th Cir. 2008); *see also*
20 *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988) ("It is not necessary to agree
21 ///

---

applicable motor vehicle laws, licensing regulations, automobile insurance and financing, and legal actions. Receives and records complaints on road conditions. Participates in traffic surveys."

[4] The DOT provides a "specific vocational preparation" ("SVP") time for each occupation. *See* Social Security Ruling ("SSR") 00-4p, available at 2000 WL 1898704, *3. The SVP corresponds to the skill level required to complete a given job. *Id.*

[5] The DOT assigns an SVP of 1-2 for unskilled work, 3-4 for semi-skilled work, and 5-9 for skilled work. SSR 00-4p, available at 2000 WL 1898704, *3.

with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'") (citation omitted).

### D. Hungerford's Residual Functional Capacity and Substantial Gainful Activity

In denying review, the Appeals Council noted that it received Hungerford's earnings record which showed wages of $19,555.40 in 2006 and $15,780.00 in 2005. A.R. 6. The Appeals Council noted that Hungerford did not mention or explain these wages at the hearing before the ALJ. *Id.* The Appeals Council found that the earnings record was consistent with the ALJ's finding of nondisability. *Id.*

Given that the Appeals Council considered the earnings record in denying review, this Court also considers it. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir.), *cert. denied*, 531 U.S. 1038 (2000).

A claimant who is engaged in substantial gainful activity is not disabled for purposes of receiving disability insurance benefits. 20 C.F.R. § 404.1571. Substantial work activity is defined as "work activity that involves doing significant physical or mental activities" and gainful activity is defined as work activity that "is the kind of work usually done for pay or profit." *Id.* §§ 404.1572-1573. Substantial gainful activity "also requires the ability to hold the job for a significant period of time." *Gatliff v. Comm'r of the Soc. Sec. Admin.*, 172 F.3d 690, 694 (9th Cir. 1999) (two months may be considered unsuccessful work attempt); *compare Tylitzki v. Shalala*, 999 F.2d 1411 (9th Cir. 1993) (job lasting 11 months can constitute substantial gain activity). Part-time work may be considered substantial. *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990) (five-and-a-half-hour work day, five days a week can constitute substantial gainful activity). "Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did." *Id.* § 404.1571. There

is a presumption of substantial gain activity if the claimant earns over the amount specified in the guidelines. *Keyes*, 894 F.2d at 1056. A claimant may rebut the presumption, although, as the Appeals Council noted, Hungerford did not mention her wages, much less rebut any presumption. *Id.*

The ALJ made no findings as to whether the presumption applied during the years 2006 and/or 2005 pursuant to 20 C.F.R. § 404.1574(b)(2) because Hungerford's earnings record in those years were not before the ALJ.[6] A.R. 18, 66 (earnings record through 2004). This matter is remanded for a finding on the issue of substantial gainful activity.

If substantial gainful activity is not dispositive on remand, the ALJ should examine Dr. Ullis' opinion dated March 27, 2006, in a Physical Capacities Assessment Form. A.R. 261-262. In the diagnosis section, Ullis found that Hungerford had severe degeneration of the cervical spine "at multiple levels with neural impingement of nerve roots and cord"; degeneration of the right shoulder joint; and moderate degeneration of the right humerus. A.R. 261. He found that the maximum she could sit in an 8-hour work day was one hour; the maximum she could sit at any one time was 30-60 minutes. *Id.* He found that the maximum she could stand in an 8-hour work day was one hour; the maximum she could stand at any one time was 30 minutes. *Id.* He found that she could do no or very little repetitive motion, pushing/pulling, fine manipulation, and gross handling. *Id.* He said that she could lift/carry 10 pounds occasionally and frequently. *Id.* He said she could do no to very little bending, squatting, and kneeling, and could occasionally press foot controls. *Id.* He said that Hungerford's complaints of pain and fatigue were consistent with his objective findings. *Id.* He found that she could not perform sedentary work, as defined by the form, noting that her ability to do sedentary work was "unlikely due to severe degeneration of spine." A.R.

---

[6] Without the earnings record in 2005, the ALJ relied on Hungerford's testimony that she worked for 8 weeks doing TV wardrobe delivery.

262. He said she could not do light work, as defined by the form, and noted that it was "highly unlikely" she could perform such work. *Id.*

The ALJ rejected Dr. Ullis' report. An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn*, 495 F.3d at 631. To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citations and internal quotations omitted).

Where, as here, the ALJ declines to give a treating physician's opinion controlling weight, the ALJ considers several factors including the following: (1) length of the treatment relationship and frequency of examination;[7] (2) nature and extent of the treatment relationship;[8] (3) the amount of relevant evidence supporting the opinion and the quality of the explanation provided; (4) consistency with record as a whole; and (5) the specialty of the physician providing the opinion. *See id.* at 631-32; 20 C.F.R. § 404.1527(d)(1)-(6).

///

///

---

[7] "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source." 20 C.F.R. § 404.1527(d)(2)(i).

[8] "Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(d)(2)(ii).

Here, in addressing Dr. Ullis' 2006 report, the ALJ noted that "the few progress notes in the interim reflect little objective data." A.R. 21. However, on January 31, 2006, Ullis referred Hungerford to the Medical Imaging Center for an MRI of the cervical spine. A.R. 274. On February 13, 2006, Hungerford had an MRI of the cervical spine, which was compared to the one taken on July 25, 2003. A.R. 271-272, 139-140. It is not apparent from the ALJ's decision whether he considered the MRI in 2006 in connection with Dr. Ullis' opinions. A.R. 21.

## IV.
## **ORDER**

IT IS HEREBY ORDERED that the ALJ's decision is reversed and the matter is remanded for proceedings consistent with this opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: December 16, 2008

ALICIA G. ROSENBERG
United States Magistrate Judge